UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADAM CHARLSON,

    Plaintiff,

    v.

DHR INTERNATIONAL INC., et al.,

    Defendants.

_____/

No. C 14-3041 PJH

**ORDER GRANTING MOTION TO DISMISS; ORDER DENYING MOTION TO REMAND**

The motion of defendants Carol Hartman and Christine Abrams for an order dismissing the causes of action asserted against them, and the motion of plaintiff Adam Charlson for an order remanding the case, came on for hearing before this court on September 17, 2014. Defendants appeared by their counsel Elizabeth O'Brien, and plaintiff appeared by his counsel Christopher LeClerc and Michele Gustafson. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss, with leave to amend, and DENIES the motion to remand, as follows and for the reasons stated at the hearing.

## BACKGROUND

Plaintiff Adam Charlson ("Charlson") entered into an Employment Agreement with DHR International, Inc. ("DHR"), effective on May 14, 2012. Charlson was to serve as an executive search consultant for DHR, as well as Managing Director for DHR's West Coast operations in San Francisco. As compensation for performing his duties, Charlson was to receive commissions, bonuses, and incentives as set forth in the Agreement. Generally, the commissions and bonuses were to be paid once a year.

Charlson asserts that by the beginning of 2014, he was under extreme financial

distress due to family expenses plus costs of divorce.  In January 2014, Charlson requested that DHR to pay him sooner than scheduled, and in particular, that he be permitted to move to a pure commission basis with monthly payments, rather than the annual payment schedule set in the Employment Agreement.  DHR's Chief Financial Officer, Doug Black ("Black") allegedly stated that DHR would advance Charlson a one-time repayable loan in April 2014, in advance of the annual payout of commissions, provided that Charlson collected all fees from his clients by March 2014.

Charlson alleges that on March 15, 2014, he called Black to tell him he had collected the fees as promised, but Black responded that he did not know whether Geoffrey Hoffmann (DHR's Chief Executive Officer – sued as "Geoffrey Hoffman") would honor the agreement.  Charlson claims that he then reached out to Hoffmann telling him of his dire situation, and also stating that he did not want to leave DHR but that he might be compelled to do so if DHR could not help him by paying him the commissions he had earned to date.  He also allegedly told Hoffmann that he had been getting calls from other firms who were interested in pursuing him.  Charlson claims that neither Hoffmann nor Black ever confirmed that they would honor the agreement Charlson had reached with Black.

Charlson asserts that having received no assurance regarding the financial arrangement, he felt increasing pressure to consider other employment options, and began speaking to other search firms.  He went as far as setting up at least one meeting with a search company (Cook Associates) when he was in Chicago for a DHR partners' meeting, and claims that he advised Hoffmann of that fact.

On April 6, 2014, he was informed on the phone by counsel for DHR that he had been terminated by DHR, that he would receive a letter, and that he should have his attorney review the letter.  That same day, he received a letter (by email) terminating his employment effective immediately, for purported misconduct and cause.  Charlson alleges that the accusations in the Termination Letter are false, as he did not commit any misconduct, disclose any confidential information, or violate the Employment Agreement.

Charlson asserts that upon the termination of his employment, DHR refused to pay

2

him the money that was owed to him. He also claims that within hours of terminating his employment, DHR began a "smear campaign" against him. This included sending a letter to Cook Associates telling them he had stolen information from DHR or otherwise breached his contract or other duty to DHR; and discrediting him in San Francisco by falsely reporting to his former employer (Caldwell Partners) that he had stolen money, information and/or property from DHR, with the result that John Wallace, CEO of Caldwell Partners, cancelled an interview on April 17, 2014 that had previously been set up for the purpose of discussing Charlson's possible return to work at Caldwell.

On April 24, 2014, DHR filed suit against Charlson in this court, alleging that he had violated his fiduciary duty and duty of loyalty owed to DHR. On May 28, 2014, Charlson filed the complaint in this action in San Francisco Superior Court, against DHR and four DHR employees – Hoffmann; Black; Carol Hartman ("Hartman"), an Executive VP in DHR's San Francisco office; and Christine Abrams ("Abrams"), employed in DHR's San Francisco office.

The complaint asserts seventeen causes of action under California statutory and common law: (1) defamation (against DHR, Hartman, Abrams); (2) tortious interference with prospective economic advantage (against DHR, Hartman, Abrams); (3) negligent interference with prospective economic advantage (against DHR, Hartman, Abrams); (4) breach of the implied covenant of good faith and fair dealing (against DHR); (5) marital status discrimination, in violation of the California Fair Employment and Housing Act ("FEHA") (against DHR); (6) failure to prevent discrimination - FEHA (against DHR); (7) intentional infliction of emotional distress (against all defendants); (8) wrongful termination (against DHR); (9) breach of written contract (against DHR); (10) quantum meruit (against DHR); (11) retaliation in violation of the California Labor Code (against DHR); (12) fraud (against DHR); (13) - (16) failure to pay wages earned, failure to pay overtime, failure to provide accurate pay stubs, and failure to pay all wages at or near time of separation, in violation of the California Labor Code (all asserted against DHR); and (17) unfair business practices under California Business and Professions Code § 17200

(against DHR and Hartman).

Defendants removed the case to this court on July 2, 2014, alleging diversity jurisdiction, notwithstanding that defendants Hartman and Abrams are citizens of California, as is Charlson. In the notice of removal, defendants allege that Hartman and Abrams were fraudulently joined, as plaintiff has failed to state a claim against them, and assert that the citizenship of those two defendants should be disregarded.

Hartman and Abrams now seek an order dismissing the five causes of action asserted against them – the first cause of action for defamation, the second cause of action for tortious interference with prospective economic advantage, the third cause of action for negligent interference with prospective economic advantage, the seventh cause of action for intentional infliction of emotional distress, and the seventeenth cause of action for unlawful/unfair business practices under § 17200 (alleged as to Hartman only) – for failure to state a claim.

Charlson seeks an order remanding the case, on the basis that removal was improper, as Hartman and Abrams are citizens of California, as is Charlson, and there is thus no complete diversity of citizenship. Defendants' opposition is premised on the same argument it makes in the motion to dismiss – that the complaint does not state a claim against Hartman and Abrams.

**DISCUSSION**

A. Legal Standards

    1. Motions to dismiss for failure to state a claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader

4

is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level[;]" and a motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event that dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters that are properly the subject of judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), as well as documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims. See No. 84 Employer-Teamster Jt. Counsel Pension Tr. Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

5

2. Motions to remand

A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court. 28 U.S.C. § 1441. A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). The removal statutes are construed restrictively, so as to limit removal jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. 1447(c). There is a "strong presumption" against removal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004). Doubts as to removability are resolved in favor of remanding the case to state court. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

B. The Parties' Motions

1. Motion to dismiss

Hartman and Abrams seek an order dismissing the claims asserted against them, for failure to state a claim. They argue that the first cause of action for defamation fails to state a claim against them, and that the failure to adequately plead defamation is fatal to the remaining claims against them (second, third, seventh and seventeenth causes of action). They contend that the first cause of a action for defamation fails because it lacks specificity as to whether the allegedly defamatory statements were oral or written, as to the specifics of what was communicated, and as to whom it was communicated. They contend that the remaining causes of action fail because they all hinge on the insufficient allegations of the first cause of action for defamation.

In the first cause of action for defamation, Charlson alleges two incidents – (1) statements made to Cook Associates in a letter sent by DHR, to the effect that Charlson was stealing confidential information and breaching his duty of loyalty to DHR; and (2)

6

statements made in April and May of 2014 to personnel at Caldwell Partners, either orally or in writing, by Hartman and Abrams acting on behalf of DHR, to the effect that Charlson had been fired from DHR for stealing confidential information and/or breaching his fiduciary duty or duty of loyalty.  Cplt ¶ 97.

In the second cause of action for tortious interference with prospective economic advantage, Charlson asserts that Hartman and Abrams had also previously worked for Caldwell; that he and Caldwell had parted amicably and Caldwell was eager to have him return; and that DHR, Hartman, and Abrams disclosed to Caldwell personnel that Charlson's employment had been terminated because he "stole information" from DHR; that in so doing defendants violated Charlson's right to privacy and defamed him; that after learning that Charlson had allegedly stolen information from DHR, Caldwell rescinded an offer for an interview it had previously extended to Charlson; and that defendants intended to disrupt the relationship between Charlson and Caldwell.  Cplt ¶¶ 105-113.

Similarly, in the third cause of action for negligent interference with prospective economic advantage, Charlson alleges that DHR, Hartman, and Abrams disclosed to Caldwell personnel that Charlson's employment had been terminated, and stated that the termination was for "stealing;" that in so doing defendants violated Charlson's right to privacy and defamed him; that after learning of the alleged "stealing," Caldwell rescinded an offer of an interview; and that defendants knew or should have known that disclosing the termination and purported "stealing" to Caldwell personnel would disrupt the relationship between Charlson and Caldwell.  Cplt ¶¶ 120-122.

In the seventh cause of action for intentional infliction of emotional distress ("IIED"), Charlson alleges that "[d]efendants' conduct," including "discrimination, retaliation, defamation, and criminally withholding wages" constitutes extreme and outrageous conduct, and was intended to cause harm to Charlson.  Cplt ¶¶ 143-144.

In the seventeenth cause of action under the UCL, Charlson alleges that "[d]efendants' actions are unlawful business practices in that they constitute defamation."  Cplt ¶¶ 196-197.

Defamation requires the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage. See Price v. Stossel, 620 F.3d 992, 998 (9th Cir. 2010; see also Taus v. Loftus, 40 Cal. 4th 683, 720 (2007). "Defamation is effected by either . . . libel [or] slander." Cal. Civ. Code § 44.

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation . . . , which exposes any person to hatred, contempt, ridicule, or obloquy, . . . or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "Slander is a false and unprivileged publication, orally uttered, . . . which, among other things, "[c]harges any person with crime" or "[t]ends directly to injure him in respect to his office, profession, trade or business" or "[w]hich, by natural consequence, causes actual damage." Cal. Civ. Code § 46.

"Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made. It need not be made to the 'public' at large; communication to a single individual is sufficient." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999). In addition, the alleged defamatory statements must be false and therefore also statements of fact, not merely expressions of opinion. Gregory v. McDonnell Douglas Corp., 17 Cal. 3d 596, 604 (1976). A privileged publication is one that is made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested." Cal. Civ. Code § 47(c).

While the exact words or circumstances of the slander need not be alleged to state a claim for defamation, the substance of the defamatory statement must be alleged. Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F.Supp. 1303, 1314 (N.D. Cal. 1997) (quoting Chabra v. S. Monterey County Memorial Hospital, Inc., 1994 WL 564566 at *6 (N.D. Cal. 1994)). "Even under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient." Jacobson v. Schwarzenegger, 357 F.Supp. 2d 1198, 1216 (C.D. Cal. 2004) (citation omitted); see also Qualls v. Regents of Univ. of California, 2013 WL 4828587, at *8

(E.D. Cal. Sept. 6, 2013) (finding allegations of defamatory statements concerning "poor performance," "dishonesty," and "insubordination" were insufficiently specific, where plaintiff failed provide additional supporting facts).

Here, Hartman and Abrams argue that the complaint fails to state a claim for defamation because Charlson fails to plead whether the alleged defamatory statements were oral or written, does not specify to whom the statements were made or when they were made, does not identify the person who is alleged to have said which words, and alleges only that someone made vague comments concerning plaintiff's termination, for stealing confidential information and/or breaching fiduciary duties or duties of loyalty. Hartman and Abrams contend that Charlson's failure to provide the requisite specificity required by California law means that the defamation claim fails to state a claim.

They argue further that because the defamation claim forms the basis of the other claims asserted against them (as indicated above), those causes of action must also be dismissed for failure to state a claim. In addition, they contend that the IIED cause of action fails to state a claim because it is based on conclusory allegations of loss of earnings and benefits, and mental and emotional distress, rather than specific facts showing he in fact sustained emotional distress.

In opposition, Charlson asserts that the complaint adequately pleads defamation. He argues that there is no absolute rule requiring that a plaintiff alleging defamation plead the exact words of the defamatory comments. He contends that libelous words must be sufficiently identified, but that while pleading the exact words is helpful (if possible), it is not required.

He argues that the complaint specifically identifies the alleged defamatory statement – that Abrams and Hartman told Wallace or someone at Caldwell that he had stolen information from DHR. He concedes that he does not know the "exact words," but contends that it is sufficient for the complaint to identify the content of the defamatory statement as it was relayed to him (that he had stolen from DHR), to identify who allegedly said it (Abrams and/or Hartman), to identify the audience (John Wallace or someone at

9

Caldwell who shared it with Wallace), and to identify the approximate time frame (April 2014).

As for DHR's suggestion that the complaint fails to state a claim for defamation because the fact that Charlson was terminated is a true statement, Charlson responds that he is not challenging any statement that he was terminated.  Rather he is challenging the statement that he was terminated for stealing from DHR, which he claims is false because he did not steal anything.  Indeed, he notes that John Wallace was aware of the termination when he set up the interview to discuss Charlson's possible return to Caldwell Partners, but it was only after he heard that the termination was allegedly for stealing that he cancelled the interview.

As for DHR's contention that the second, third, seventh and seventeenth causes of action against Hartman and Abrams are based solely on defamation, Charlson responds that the claims of interference with prospective economic advantage are based not only on the alleged defamation, but also on breach of privacy.  He asserts that the IIED claim is based on "all of the alleged conduct" including defamation, as is the UCL claim against Hartman.

Finally, Charlson asserts that he has stated a valid IIED claim, as he has alleged that he was in dire financial straits at the time he was fired by DHR, and that he was also going through an acrimonious divorce and dealing with major family upheaval, and that Hartman and Abrams maliciously told his former employer (Caldwell Partners) that he had been fired by DHR for stealing information, knowing that it would impair his ability to obtain employment at Caldwell (and possibly other search firms).  He argues that deliberately setting out to destroy a former colleague's reputation in the industry is extreme and outrageous behavior.

The court finds that the motion must be GRANTED.  It is true that in an action for libel, it is the common practice to plead the exact words, as "[t]he general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint."  Kahn v. Bower (1991) 232 Cal. App.3d 1599, 1612 n.5 (1991) (citations

omitted).  However, "[i]n an action for slander this is often difficult," and it may be sufficient for the plaintiff to simply allege the substance of the statement.  5 Witkin, California Procedure 5th (2008), Pleading § 739;  see also Okun v. Superior Court, 29 Cal. 3d 442, 458 (1981).  Here, the substance of the words – that the reason Charlson was fired was that he had stolen information from DHR – is set forth in the complaint, as is the timeframe in which the statements were made.

However, apart from the speculation that it "must have been" Hartman and/or Abrams who falsely stated that Charlson was terminated for stealing, the complaint does not allege facts showing that Hartman or Abrams told anyone at Caldwell Partners anything about the reason for Charlson's discharge from employment.  Without the allegation of such facts, as well as some indication as to the identity of the person or persons at Caldwell to whom Hartman and Abrams communicated this information, the defamation claim fails as to Hartman and Abrams, and the remaining claims asserted against Hartman and Abrams also fail, as they are premised on the alleged defamatory statements.

As for Charlson's argument that the causes of action for intentional and negligent interference with prospective economic advantage, the IIED claim, and the § 17200 claim are based on "breach" or "invasion" of privacy and interference with his ability to secure employment, the court finds that the alleged false statements about the reason(s) for Charlson's termination underlie and provide the basis for those claims.  Thus, having failed to adequately allege facts showing that Hartman and Abrams falsely stated to someone at Caldwell Partners that Charlson was terminated from DHR for stealing, the complaint also fails to state a claim for interference with prospective economic advantage, IIED, or unfair business practices (asserted as a derivative claim based on other causes of action).

The dismissal is with leave to amend to plead facts sufficient to support the cause of action for defamation, as stated above.  Plaintiff may also amend the other causes of action asserted against Hartman and Abrams, if he is able to allege facts supporting those claims independently of the allegation that Hartman and Abrams made false statements to someone at Caldwell Partners regarding the reasons Charlson was terminated.

2.      Motion to remand

Charlson seeks an order remanding the case to San Francisco Superior Court, arguing that there is no diversity jurisdiction, and defendants have not met their burden of showing that removal was proper.  Defendants oppose the motion on the ground that Hartman and Abrams were fraudulently joined and the complaint fails to state a claim against them.

A party is considered fraudulently joined where the complaint clearly fails to allege a state law claim against that defendant.  See Hunter v. Philip Morris, 582 F.3d 1039, 1044 (9th Cir. 2009).  "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).  In the context of fraudulent joinder, the court's inquiry into the viability of the claims is less stringent than the standard applied to motions to dismiss under Rule 12(b)(6). Briano v. Conseco Life Ins. Co., 126 F.Supp. 2d 1293, 1299 n.5 (C.D. Cal. 2000); see also Mayes v. Rapoport, 198 F.3d 457, 466 n.15 (4th Cir. 1999).

Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." Macey v. Allstate Property and Cas. Ins. Co., 220 F.Supp. 2d 1116, 1117 (N.D. Cal. 2002) (citation omitted).  "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." Id.; see also Good v. Prudential, 5 F.Supp. 2d 804, 807 (N.D. Cal. 1998).  "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 141 F.Supp. 2d 1005, 1008 (N.D. Cal. 2001); see also Gaus, 980 F.2d at 566.

Charlson argues that he has adequately alleged defamation against Abrams and Hartman, because he has alleged the substance of the allegedly defamatory comments, has alleged the general time frame (April 2014), has alleged who make the statements (Hartman and Abrams), the audience for the statements (Wallace or someone at Caldwell), and has alleged the impact of the defamatory statements on his employment prospects.

12

The court finds that the motion must be DENIED for the reasons stated above, based on Charlson's failure to state a claim for defamation against Hartman and Abrams. If Charlson amends the complaint and succeeds in stating a claim against Hartman and Abrams, he may renew his motion to remand at that point.

## CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss is GRANTED and plaintiff's motion to remand is DENIED. Any amended complaint shall be filed no later than October 23, 2014. No new causes of action or new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  September 25, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge